UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

PAUL WAYNE SMITH,

                Plaintiff,                 Civil Action No. 16-00083
                                                Honorable Waverly D. Crenshaw
v.                                           Magistrate Judge David R. Grand

SOCIAL SECURITY
COMMISSIONER,

                Defendant.

_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION
FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [17]**

       Plaintiff Paul Wayne Smith ("Smith") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Smith filed a Motion for Judgment on the Administrative Record [17]. The Commissioner filed a response (Doc. #19), and Smith filed a reply (Doc. #20). Pursuant to Administrative Order No. 24 entered on January 23, 2018, the motion was referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I. RECOMMENDATION**

       For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Smith is not disabled as defined by the Act. Accordingly, the Court RECOMMENDS that Smith's Motion for Judgment on the Administrative Record (Doc. #17) be DENIED, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

1

## II. REPORT

### A. Procedural History

On April 18, 2013, Smith filed an application for DIB, alleging a disability onset date of March 8, 2013.[1] (Tr. 143). Smith's claim was denied at the initial stage on October 14, 2013. (Tr. 14). His claim was then denied upon reconsideration on December 13, 2013. (*Id.*). Smith next filed a timely request for an administrative hearing, which was held before ALJ Sharon H. Smith on June 23, 2015. (*Id.*).[2] On July 29, 2015, the ALJ issued a decision finding that Smith was not disabled under the Act. (Tr. 14-22). On August 10, 2016, the Appeals Council denied review. (Tr. 1-5). Smith timely filed for judicial review of this final decision on October 7, 2016. (Doc. #1). Smith then filed a Motion for Judgment on the Administrative Record and brief in support on February 27, 2017. (Docs. #17, #18). The Commissioner filed a response on March 27, 2017 (Doc. #19). Smith filed a reply on April 10, 2017. (Doc. #20).

### B. Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

---

[1] The record indicates that Smith stopped working on March 8, 2013. (Tr. 184). Smith explains that he was employed as a security guard until this date, and that he only ceased working because he "was laid off when our contract ran out. No more work." (*Id.;* Tr. 417-18).

[2] The hearing transcript was mistakenly not included in the record. (Doc. #13). However, on February 2, 2017, the Commissioner filed a motion to supplement the record to include the transcript. (Doc. #14). That motion was granted (Doc. #16), making the transcript (Doc. #14-1, Tr. 413-34) part of the record.

2

42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Rogers v. Soc. Sec. Admin.*, No. 3:14-CV-1322, 2017 WL 3674840, at *4-5 (M.D. Tenn. Aug. 24, 2017) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C. Background

At the time of the administrative hearing, Smith was 50 years old, and lived with his uncle. (Tr. 416-17). He earned a GED. (Tr. 417). He had worked as a farmhand in the agricultural sector from 1998 to 2008. (Tr. 185, 418). From April 2008 until March 8, 2013,

3

Smith worked 40 hours per week as an unarmed security guard. (Tr. 185, 418-19). He was required to walk for one hour per eight-hour day, but did not have to climb, bend, kneel, crouch, crawl, handle, reach, lift objects, or serve in any supervisory capacity. (Tr. 205).

Smith alleges disability as a result of chronic obstructive pulmonary disease ("COPD"), hypertension, diabetes, anxiety disorder, emphysema, and atrial fibrillation. (Tr. 184). However, Smith's motion makes no reference to any disability other than his respiratory functioning, and the Court accordingly focuses its analysis on this impairment. The Court has thoroughly reviewed the record in this matter, including the hearing transcript and Smith's medical records, Function Report, and Disability Reports. Instead of summarizing that information here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### D. The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Smith did not engage in substantial gainful activity since March 8, 2013 (his alleged onset date). (Tr. 16). At Step Two, the ALJ found that Smith has the severe impairments of atrial fibrillation, COPD, anxiety disorder, obesity, and diabetes mellitus. (*Id.*). At Step Three, the ALJ found that Smith's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then found that Smith retains the residual functional capacity ("RFC"):

> to perform light work as defined in 20 C.F.R. 404.1567(b), except that [Smith] cannot climb ladders, ropes, or scaffolds. He can occasionally perform other postural activities. He should avoid concentrated exposure to extremes of temperature, humidity, and pulmonary irritants. He should avoid all exposure to unprotected heights and moving machinery. He can remember and carry out simple, detailed, and multi-step detailed tasks and decisions, but not make executive level decisions. He can maintain concentration, persistence, and pace with normal breaks throughout the

4

day.  He could work with co-workers and supervisors appropriately.  He could tolerate only frequent interaction with the public.  He can adapt to occasional changes in the workplace.

(Tr. 18).

At Step Four, the ALJ found that Smith was capable of performing his past relevant work as a security guard "as generally performed."  (Tr. 21).  The ALJ found that this position "requires a light exertional level," one which Smith's RFC allowed him to perform.  (Tr. 21-22). She based this conclusion on the Dictionary of Occupational Titles and the testimony of a vocational expert that was provided during the hearing.  (*Id.*).  Because the ALJ found that Smith could perform his past work, she determined that he was not disabled under the Act.  As a result, the ALJ did not address Step Five.  (*Id.*).

### E.  Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm's of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

5

(internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535, *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter different and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

### F. Analysis

In his motion, Smith argues that the ALJ erred in: (1) giving limited weight to the medical opinion of his treating physician, John Brewer, M.D., without providing "sufficient" reasons for doing so; (2) failing to properly evaluate whether Smith meets or medically equals Listing 3.02(A); and (3) failing to include a function-by-function RFC assessment of his exertional capacity. These arguments are addressed below.

#### 1. Substantial Evidence Supports the ALJ's Assessment of Dr. Brewer's Opinion

Smith asserts that the ALJ violated the treating physician rule in her handling of Dr. Brewer's opinion. Specifically, he argues that the ALJ erred in giving "little weight" to the medical opinion authored by Dr. Brewer, while giving "great weight" to the opinions of non-treating state agency consultants Charles Settle, M.D., and Thomas Thrush, M.D. (Doc. #18 at 8-9). Smith avers that the ALJ should have accorded great weight to Dr. Brewer's opinion because it was consistent with the record, and contends that the ALJ failed to acknowledge several medical findings in the record which apparently corroborate Dr. Brewer's opinion. (*Id.*). Smith believes Dr. Brewer's opinion was more meticulously scrutinized than those of the non-treating physicians, and that in failing to provide "sufficient" reasons for weighing the various medical opinions as she did, the ALJ's decision "amounted to her cherry picking the evidence which supported her decision and failing to properly consider the record as a whole." (*Id.* at 7).

The treating physician rule requires an ALJ to defer to the medical opinion of a claimant's treating physician so long as that opinion is supported by objective medical evidence and is not inconsistent with the rest of the claimant's medical record. *See* Soc. Sec. Reg. 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "Generally, the opinions of treating physicians are given substantial, if not controlling,

deference," but they "are only given such deference when supported by objective medical evidence." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). *See also* 20 C.F.R. § 404.1527(d)(2)). However, it is "error to give [a treating source] opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. *Soc. Sec. Rul. 96-2p*, 1996 WL 374188, at *2 (July 2, 1996). In other words, Courts have recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically accepted clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley*, 581 F.3d at 406.

If an ALJ declines to give a treating physician's opinion controlling weight, she must document how much weight she gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)). "Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion' – not an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2). "Good reasons" are ones "that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting *Soc. Sec. Rul. 96-2p,* 1996 WL 374188, at *5). Ultimately, "[t]his procedural 'good reason' rule serves both to ensure adequacy

8

of review and to permit the claimant to understand the disposition of his case." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550-551 (6th Cir. 2010) (citing *Rogers*, 486 F.3d at 242). That a treating physician's opinion is inconsistent with the record constitutes a "good reason" for not giving controlling weight to it. *Reynolds v. Comm'r or Soc. Sec.*, 424 F. App'x 411, 417-18 (6th Cir. 2011).

a. Dr. Brewer's Opinion

On October 16, 2014, Dr. Brewer filled out an Ability to Do Work-Related Activities (Physical) Assessment. (Tr. 359-361). Dr. Brewer circled numbers indicating that Smith can stand and walk for twenty minutes without interruption and must walk for fifteen minutes at least every thirty minutes. (*Id.*). He noted that in an eight-hour workday, Smith could stand and walk for about two hours (with normal breaks), but could only sit for "less than two hours at a time." (*Id.*). He also marked boxes specifying that Smith had a limited ability to lift and carry on an occasional basis, and an even more limited ability to lift and carry on a frequent basis.[3] (*Id.*). He checked boxes indicating that Smith can occasionally twist, but could never bend, crouch, nor climb. (*Id.*). He opined that Smith's impairments would cause limitations in his ability to elevate his legs, kneel, crawl, and balance, and that he may need to lie down at unpredictable intervals every four hours during a normal eight-hour workday. (*Id.*). He checked boxes indicating that Smith could "occasionally" reach (both outward and overhead), handle, finger, peel, and push/pull with both hands. (*Id.*). He also specified that Smith should avoid all exposure to extreme heat and cold, high humidity, fumes, odors, dusts, gases, perfumes, soldering fluxes, solvents, cleaners, and chemicals. (*Id.*). He set forth that Smith's conditions

---

[3] An occasional basis refers to no more than 1/3 of an 8-hour day, while a frequent basis refers to 1/3 to 2/3 of an 8-hour day. (Tr. 360). The form asked Dr. Brewer to rate Smith's maximum ability to lift and carry on these bases, and he indicated "20#" and "less than 10#," respectively. (Tr. 359).

9

would cause him to be absent from work more than four days per month.  (*Id.*).  Finally, he opined "within a reasonable degree of medical . . .  probability" that these limitations began "several years ago."  (*Id.*).

The ALJ specifically considered Dr. Brewer's opinion, evaluating it as follows:

> The undersigned finds health department records do not support these limitations.  Dr. Brewer's examinations would not support these limitations as his examinations on October 9, 2014, December 2, 2014, and March 3, 2015 was [sic] normal [citing Tr. 362-412].  Furthermore, the claimant's function report suggests greater activity [citing Tr. 192-202].  Specifically, the claimant stated he cleans [his] house all day, he can cook for one hour, and can shop for 2 hours at one time.  Therefore, the undersigned gives this opinion little weight.

(Tr. 20).

Smith takes issue with the ALJ's decision to give Dr. Brewer's opinion little weight based on her conclusion that the record was inconsistent with his opinion.  (Doc. # 18 at 10).  He argues that the ALJ "failed to properly consider the record as a whole as well as relevant factors when evaluating Dr. Brewer's treating source opinion."  (*Id.*).  Again, the gravamen of his claim appears to be that:  (1) the ALJ "cherry picked" the record; and (2) the ALJ did not give good or "sufficient reasons" for giving Dr. Brewer's opinion little weight.  (Doc. #18 at 7-8).

"It is generally recognized that an ALJ 'may not cherry-pick facts to support a finding of non-disability while ignoring the evidence that points to a disability finding.'"  *Gordon v. Comm'r of Soc. Sec.*, No. 14-11990, 2015 WL 5335477, at *14 (E.D. Mich. Aug. 12, 2015) (quoting *Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-2313, 2013 WL 943874, at *6 (N.D. Ohio Mar. 11, 2013)).  But "the ALJ does not 'cherry-pick' the evidence merely by resolving some inconsistencies unfavorably to a claimant's position."  *Id.*  (quoting *Solembrino v. Astrue*, No. 1:10-CV-01017, 2011 WL 2115872, at *8 (N.D. Ohio May 27, 2011); citing *Smith*, 2013 WL 943874, at *6 and *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009)).  "[I]t is not

10

uncommon in disability cases for there to be some inconsistencies in the record," and it is the ALJ's duty "to resolve any inconsistencies in the evidence." *Id.* The Court cannot conduct a *de novo* review of the record evidence, and an ALJ's findings are "not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Id.* (citing *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001)); *Cosma v. Comm'r of Soc. Sec.*, No. 14-11787, 2015 WL 5693664, at *3 (E.D. Mich. Sept. 29, 2015) ("Indeed, courts have recognized that allegations of cherry picking are seldom successful because they call for the court to re-weigh the evidence." (*citing Delong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 725 (6th Cir. 2014))). "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Gordon*, 2015 WL 5335477, at *14 (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

Here, the ALJ did not "cherry pick" the evidence, and she satisfied the "good reasons" requirement because she pointed to specific parts of the record that are inconsistent with the opinion offered by Dr. Brewer. (Tr. 20). *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (citing *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993) and *Cutlip*, 25 F.3d at 286 (inconsistency with the record is a "sufficiently valid reason not to accept the opinions of a treating medical doctor")). For example, the ALJ explained that despite the extensive limitations that Dr. Brewer assigned to Smith, Dr. Brewer noted no abnormalities during his three most recent examinations of Smith.[4] (Tr. 20). To clarify, Dr. Brewer determined on October 16, 2014

---

[4] Smith argues in his motion that these same medical records actually do indicate abnormalities which the ALJ overlooked. (Doc. #18 at 7-8). For example, he asserts that the ALJ failed to note that Smith showed "abnormal lab results regarding INR, HgB A1C, and PT" levels as well as "complaints of anxiety with racing pulse." (*Id.*). However, Smith makes no attempt to connect these lab results to any functional limitations. *Greene v. Comm'r of Soc. Sec.*, No. 2:14-CV-10005-DPH-PTM, 2014 WL 12570932, at *10 (E.D. Mich. Nov. 26, 2014, *report and recommendation adopted*, No. 14-10005, 2014 WL 12573828 (E.D. Mich. Dec. 31, 2014) ("It is

11

Case 1:16-cv-00083    Document 21    Filed 03/19/18    Page 11 of 26 PageID #: 525

that Smith's limitations began "several years ago." (Tr. 361). However, when Dr. Brewer examined Smith in February, April, May, August, and November of 2013 – all within two years of when his impairments allegedly began – he found that Smith's "general" physical exam was "normal," as was his respiratory functioning. (Tr. 322, 327, 334, 338, 344). Moreover, when Dr. Brewer examined Smith in October 2014, December 2014, and March 2015, he similarly noted no abnormalities. (Tr. 365, 370, 377).

Other record evidence supports the ALJ's analysis. Three consulting physicians found that Smith was capable of physical activity far beyond what Dr. Brewer determined. (Tr. 54-57, 72-74, 300-03). For example, while Dr. Brewer found that Smith could walk and sit for only about two hours total per day, Drs. Settle, Thrush, and Darrel Rinehart, M.D. concluded that Smith could walk and sit for six hours total each day. (*Id.*). Dr. Brewer also opined that Smith could never bend, crouch, nor climb, while the non-treating physicians opined that he could undertake these actions occasionally. (*Id.*). Further, Dr. Brewer noted that Smith could only "occasionally" push and pull, but the non-treating physicians noted Smith had an "unlimited" ability to do the same. (*Id.*). Ultimately, while Dr. Brewer's medical opinion called for strict limitations that would prevent Smith from working, the non-treating physician opinions relied upon by the ALJ concluded that Smith "appears capable of sustaining a 40 hr. workweek" at a "light" exertional level, which by definition "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); (Tr. 57, 60, 74, 78). The record thus supports the ALJ's handling of the medical opinions in the record.

---

not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

12

Case 1:16-cv-00083    Document 21    Filed 03/19/18    Page 12 of 26 PageID #: 526

Further, the ALJ appropriately noted that Smith's own Function Report was inconsistent with the conclusions reached by Dr. Brewer. (Tr. 20, 192-202). For instance, the ALJ noted that Smith wrote in his Function Report that he had the ability to cook for at least an hour at a time, take out the trash, do his own laundry, clean his house all day, drive regularly, carry 50 pounds worth of items, walk for 100 yards and climb stairs (although with some shortness of breath), and shop for himself for several hours at a time. (Tr. 193-197). Smith also answered "Yes," to a question about whether he takes care of anyone else, indicating that he takes his mother and brother to their doctors' appointments. (Tr. 193). Given these statements, the ALJ was justified in the weight she gave to Dr. Brewer's medical opinion because Smith's capabilities are at odds with the restrictions proposed by Dr. Brewer.

Smith claims that the description of his ability to partake in daily activities, as outlined in his Function Report, is not at odds with Dr. Brewer's opinion because these daily activities "certainly do not equate to the demands of a full-time job." (Doc. #18 at 8). This argument misses the mark, though, because the ALJ did not equate Smith's function report with an ability to do full-time work, but rather referenced it to show that Dr. Brewer's conclusions about what Smith could not do were inconsistent with certain aspects of the record. (Tr. 20).

Smith's final argument as to the weight the ALJ gave to Dr. Brewer's opinion relates to the ALJ's statement that the "health department records [completed by Dr. Brewer] are largely handwritten and illegible." (Tr. 20-21). Smith argues that "[i]f the ALJ had difficulty reading the health department records, she erred by failing to seek clarification prior to simply stating that they were illegible and denying [Smith's] benefits." (Doc. #18 at 7). He asserts that "[i]t is puzzling how the ALJ can state the records are illegible but at the same time state that the records do not support Dr. Brewer's limitations," as such an "internal inconsistency results in the

13

decision not being supported by substantial evidence." (*Id.*). However, the ALJ did not conclude—in the sweeping manner Smith suggests—that the health department records were so illegible that they were rendered useless. The health department records certainly contain some handwriting that is difficult to decipher (*see, e.g.*, Tr. 338, 348, 370), but the documentation provides an ample number of checked boxes, circled items, typed notes, as well as a rather extensive amount of perfectly legible handwriting (*see, e.g.*, Tr. 235-253, 257-271, 275-326). Indeed, as Smith himself even notes, the ALJ *did* rely on the contents of certain health department records in reaching fact-specific conclusions which were based on the findings noted in these medical records. (Doc. #18 at 7) (noting that "the ALJ then cited three specific visits to the health department . . . ."). Accordingly, this argument lacks merit.

In sum, the ALJ provided "good reasons" for giving little weight to Dr. Brewer's opinion, and that aspect of the ALJ's decision is supported by substantial evidence.

### b. The Opinions of the Non-Treating Physicians

In his motion, Smith does not differentiate between the individual opinions of the non-treating physicians, and instead argues generally that the ALJ erred in "ultimately [giving] great weight to the opinions of the non-examining state agency consultants who had never seen or examined [Smith]." (Doc. #18 at 9). In support of this assertion, he cites to *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013), which holds that an ALJ must apply the same level of scrutiny to the medical opinions of both treating physicians and non-treating physicians. Moreover, *Gayheart* noted that if an ALJ chooses not to give a treating physician's opinion controlling weight due to its inconsistency with the record – such as we have here – then the ALJ must "acknowledge equivalent inconsistencies in the opinions of the consultative doctors." *Id.* In essence, Smith claims that the ALJ's decision should be remanded because she applied a more

14

rigorous level of scrutiny to Dr. Brewer's opinion than she did to the opinions of Drs. Rinehart, Settle, and Thrush, which Smith believes were too inconsistent with the record to justify any reliance on them. (Doc. #18 at 9). However, Smith provides no examples of any such inconsistencies, nor does he point to any evidence indicating that the opinions of the non-treating physicians in this case were subject to different levels of scrutiny. While this alone is grounds for rejecting Smith's argument, a merits review leads to the same conclusion.

"Social security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are highly qualified and are experts in Social Security disability evaluation." *Rios v. Comm'r of Soc. Sec.*, 1:16-CV-171, 2016 WL 6310280, at *3 (W.D. Mich. Oct. 28, 2016 (internal quotations omitted). "A non-examiner's review of a complete case record is an example of an appropriate circumstance in which to afford a non-examiner's opinion more weight than an examiner's opinion" and "there is no requirement that a non-examiner's opinion be based on a review of the entire record in order to support an ALJ's decision denying benefits." *Kilkolski v. Comm'r of Soc. Sec.*, No. 14-cv-14700, 2016 WL 6080217, at *9 (E.D. Mich. Jan. 27, 2016). An ALJ is "free to consider the consultant's opinion and determine what weight, if any, it should be given." *Id.; see also Cady v. Comm'r of Soc. Sec.*, No. 1:14-cv-57, 2015 WL 3767666, at *6 (W.D. Mich. June 17, 2015) ("the ALJ's reliance on the state agency consultants should provide no grounds for remand" where "[t]he ALJ's opinion makes clear that he considered the consistency of the state agency consultants' opinions with the entire record, as well as the remainder of the medical record." In other words, "opinions of consulting sources may be preferred over those of treating sources when the latter are not well supported by the record." *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428 (6th Cir. 2014), *report and recommendation adopted*, 2016 WL 1357900, at *6 (E.D.

Mich. Apr. 5, 2016).  As discussed below, the ALJ fairly considered the non-treating physician opinions' consistency with the record as a whole, and her reliance on those opinions is not error.

### i.  Dr. Rinehart's Opinion

Dr. Rinehart conducted a consultative exam of Smith on July 17, 2013.  (Tr. 300-303). Dr. Rinehart noted that Smith's chief complaint was shortness of breath (mostly when it is "extremely hot or if he is very active"), stemming from COPD, emphysema, and a long history of tobacco use, but that he was "not oxygen or steroid dependent." (*Id.*).  Dr. Rinehart also noted Smith's coarse breathing sounds, discussed Smith's past symptoms relating to atrial fibrillation, and reviewed his pulmonary exam and chest x-ray.  (*Id.*).  Finally, Dr. Rinehart noted that Smith reported working in his garden some evenings, and that he "tr[ies] to cut his grass."  (Tr. 301). Dr. Rinehart ultimately concluded that "[b]ased on exam and my observation at this time, it is my impression that [Smith] should be able to sit, stand, lift, and walk for six to eight hours totally in an eight-hour workday."  (*Id.*).  The ALJ gave Dr. Rinehart's opinion little weight, but only because she found it was "not a full functional assessment"; indeed, the ALJ specifically found that the limitations Dr. Rinehart imposed were "consistent with the record."  (Tr. 20).

### ii.  Dr. Settle's Opinion

On October 11, 2013, Dr. Settle, a Disability Determination Service physician, reviewed Smith's medical record.  (Tr. 48-61).  Dr. Settle concluded that Smith could lift and carry twenty pounds occasionally and ten pounds frequently, could sit, stand, and walk six hours each in an eight-hour workday, and could occasionally balance, stoop, kneel, couch, crawl, and climb ramps and stairs.  (Tr. 55-56).  He found that Smith could not climb ladders, ropes, or scaffolds, and that he should avoid concentrated exposure to extreme temperatures, high humidity, and pulmonary irritants, as well as hazards such as machinery and heights.  (*Id.*).  He concluded that

16

"[Smith] appears capable of sustaining a [forty hour] workweek" insofar that the work only involved a "light" exertional level. (57, 60). The ALJ assessed Dr. Settle's opinion, concluded that it was "consistent with the record," and subsequently afforded it "great weight." (Tr. 21).

<em>iii.      Dr. Thrush's Opinion</em>

On December 12, 2013, Dr. Thrush, also a Disability Determination Service physician, reviewed Smith's medical record. (Tr. 65-79). Dr. Thrush concluded that Smith could lift and carry twenty pounds occasionally and ten pounds frequently, could sit, stand, and walk six hours each in an eight-hour workday, and could occasionally balance, stoop, kneel, couch, crawl, and climb ramps and stairs. He noted that Smith could not climb ladders, ropes, or scaffolds, and that he should avoid concentrated exposure to extreme temperatures, high humidity, and pulmonary irritants, as well as hazards such as machinery and heights. (Tr. 72-73). Dr. Thrush determined that "[Smith] appears capable of sustaining a [forty hour] workweek" when the work only requires a "light" exertional level. (Tr. 57, 60). The ALJ assessed Dr. Thrush's opinion, concluded that it was "consistent with the record," and therefore gave it "great weight." (Tr. 21).

<em>iv.      The ALJ Did Not Err in Relying on the Opinions of the<br>Non-Treating Physicians</em>

The ALJ gave great weight to Dr. Thrush and Dr. Settles' opinions because she found they were consistent with the record, while the medical opinion of Dr. Brewer was not. (Tr. 20-21). This aspect of the ALJ's decision is supported by substantial evidence. A few examples, largely discussed earlier, help illustrate this point.

On October 16, 2014, Dr. Brewer opined that Smith's disabling limitations began "several years ago." (Tr. 361). However, Smith stopped working less than two years earlier (on March 8, 2013) only when his employer lost the contract which provided for his job. (Tr. 184, 417-18). After losing his job, Smith received unemployment benefits throughout 2013 and up

17

until at least September 2014, thus indicating his ability to work – a finding which is consistent with the non-treating physicians' conclusions that Smith could sustain a forty-hour workweek. (Tr. 57, 60, 163-165, 313); *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004) ("There is no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [he] is ready and willing to work.") (internal citations omitted). Thus, when the record demonstrated that Smith was able to perform his past work from which he was laid off, the ALJ was able to conclude: (1) there was a good reason to discount Dr. Brewer's opinion; and (2) the record substantiated the conclusions reached by the non-treating physicians. *See Allen v. Apfel*, 3 F. App'x 254, 257 (6th Cir. 2001) (in finding that a claimant's impairment was not severe, the ALJ properly found support for her conclusion when she considered that "the cessation of [claimant's] employment . . . was not due to any disability, but was the result of the facility's closing").

Smith's Function Report also evinced his ability to engage in a range of daily tasks, including running his own errands, cleaning his home, walking, and driving. (Tr. 193-197). Taking this into consideration, the non-treating physicians concluded that Smith was able to perform work as a security guard. (Tr. 57, 74). Especially given that Smith himself specified that this line of work only "required [him] to walk for one hour per eight-hour day, [and that he did] not have to climb, bend, kneel, crouch, crawl, handle, reach, [nor] lift objects," the daily activities he said he engaged in readily surpass the relatively minimal physical demands of his past work. (Tr. 205). Thus, the non-treating physicians' conclusions were consistent with the record and appropriate sources to rely on. *Wejrandt v. United States Attorney Gen.*, No. CV 16-

10018, 2017 WL 3765768, at *13 (E.D. Mich. July 11, 2017); *Cole v. Comm'r of Soc. Sec.*, No. 1:15-CV-833, 2016 WL 5334593, at *6 (W.D. Mich. Sept. 23, 2016).

Even further, the fact that Smith's medical examinations consistently yielded "normal" examinations dating back to February 2013 supports the ALJ's decision to give great weight to the non-treating physicians. (Tr. 322, 327, 334, 338, 344). *Gault v. Comm'r of Soc. Sec.*, 535 F. App'x 495, 496 (6th Cir. 2013) (ALJ was correct to "reject the conclusion that [plaintiff] had marked mental limitations on the basis that it conflicted with her benign clinical examinations . . . and daily activities. Thus, viewed in context, the ALJ adequately explained that he accepted [the consulting physician's] opinion that [plaintiff] had some mental limitations, but rejected that those limitations were disabling").

In sum, substantial evidence supports the ALJ's evaluation of the treating physician and non-treating physicians' opinions in this case. Smith fails to show how the non-treating physicians' opinions are inconsistent with the record, or why these opinions should not have been afforded the weight the ALJ assigned to them. Accordingly, this argument fails.

### 2. *Substantial Evidence Supports the ALJ's Evaluation of Listing 3.02(A)*

Smith argues that the ALJ erred in finding that he did not meet or medically equal Listing 3.02(A). (Doc. #18 at 10-11). The Court finds no such error.

Smith bears the burden of proving at Step Three that his impairments meet or medically equal a particular listing. *See Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987); *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 645 (6th Cir. 2006) ("Plaintiff bears burden of establishing that [he] satisfies the requirements of a listed impairment."). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers "severe enough to prevent an

19

individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). In other words, a claimant who meets or medically equals the requirements of a listed impairment will be deemed conclusively disabled. *See Reynolds*, 424 F. App'x at 414. "A claimant must satisfy all of the criteria to meet the listing," *Rabbers*, 582 F.3d at 653, and all of these criteria must be met concurrently for a period of at least 12 continuous months. *See* 20 C.F.R. §§ 404.1509, 404, 1525(c)(3)-(4); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(D) ("Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation."); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

Listing 3.02(A) pertains to chronic respiratory disorders and requires the use of $FEV_1$ values to determine whether a claimant with COPD is disabled.[5] *See* 20 C.F.R. Pt. 404, Subpart P, App. 1, § 3.02(A), Table I (effective July 20, 2015 to August 11, 2015). To qualify under Listing 3.02(A), claimants are required to meet a threshold $FEV_1$ value according to their age, gender, and height without shoes. (*Id.*) During the relevant time period, and given that Smith was over 72 inches tall, in order to be found disabled under the Listing, he needed his highest $FEV_1$ score to be less than or equal to 1.65. *See id*. The ALJ concluded that Smith did not meet

---

[5] Pulmonary function tests, in general, measure lung capacity by determining how much air the lungs can hold, how quickly air moves in and out of the lungs, and how well the lungs move oxygen into and remove carbon dioxide from the bloodstream. *The Merck Manual*, 19th ed., § 14, 1851 (2011). Spirometry is the pulmonary function test used to measure severity of lung obstruction in patients with COPD, such as Smith. *Social Security Disability Tests*, Vol. 1, § 3.22 at 3-50 (2011). For this test, a patient breathes into a mouthpiece attached to a recording device, which in turn produces multiple measurements, including the forced expiratory volume in one second ("$FEV_1$"). *Id.* at 3-49. This $FEV_1$ score represents the volume of air that can be exhaled with maximum effort during the first second of inhalation. (*Id.*).

this Listing, noting that "Listing 3.02A requires an $FEV_1$ of 1.65 or less," but that "testing on October 4, 2013, found [Smith] to have an $FEV_1$ of 1.77." (Tr. 16-17).

Smith concedes that the $FEV_1$ score relied upon by the ALJ of 1.77 exceeded the 1.65 threshold, but he nevertheless argues that the ALJ erred by failing to acknowledge that he had other $FEV_1$ scores, some of which were below this threshold. (Doc. #18 at 10). Specifically, in his motion, Smith points to $FEV_1$ testing conducted in July 2013, which produced scores of 1.09, 1.16, 1.36, 1.36, 1.54, and 1.59. (Tr. 305). Smith also refers to additional $FEV_1$ testing conducted in October 2013, resulting in scores of 1.31, 1.36, 1.36, 1.37, 1.42, 1.60, 1.61, 1.66, 1.74, and 1.77. (Tr. 318). When examining Smith, both Dr. Brewer and Dr. Rinehart noted that he exerted satisfactory effort during both sets of tests. (Tr. 307, 319). While Smith acknowledges that the ALJ utilized the 1.77 $FEV_1$ score, it is Smith's position that all of the scores below 1.65 should have factored into the ALJ's decision. (Doc. #18 at 10-11).

The regulations in effect at the time of the ALJ's decision specify that "the highest values of the FEV1 [testing] . . . should be used to assess the severity of the respiratory impairment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00E (effective July 20, 2015 – August 11, 2015); *see also Gwizdala v. Comm'r of Soc. Sec.*, 191 F.3d 452 (6th Cir. 1999). Therefore, the ALJ properly used Smith's $FEV_1$ score of 1.77 to evaluate his eligibility under Listing 3.02(A). Because that score exceeded 1.65, the ALJ properly concluded that Smith did not meet Listing 3.02(A).[6]

Smith argues that even if he did not meet Listing 3.02(A), the ALJ erred in failing to explain why he did not medically equal the Listing given: (1) his numerous $FEV_1$ scores which were below the 1.65 threshold, and (2) medical testing from July 2013 indicating that his lung

---

[6] That Smith had two other scores that were above 1.65—namely scores of 1.66 and 1.74— further supports the ALJ's analysis as to this Listing. (Tr. 310).

age was 99 years old. (Doc. #18 at 10-11) (citing Tr. 305-307). He also contends that these aspects of his medical history should augment the weight given to Dr. Brewer's opinion. (*Id.*). These arguments lack merit.

"When a claimant has a listed impairment but does not meet the criteria, an ALJ can find that the impairment is 'medically equivalent' to the listing if the claimant has 'other findings related to [the] impairment that are at least of equal medical significance to the required criteria.'" *Thomas v. Comm'r of Soc. Sec.*, No. 12-14758, 2014 WL 688197, at *8 (E.D. Mich. Feb. 21, 2014) (quoting 20 C.F.R. § 416.926(a)). To that end, Social Security regulations mandate "that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." *Soc. Sec. Rul. 96-6p*, 1996 WL 374180, at *3 (July 2, 1996); *see also Retka v. Comm'r of Soc. Sec.*, No. 94-2013, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) (noting that "[g]enerally, the opinion of a medical expert is required before a determination of medical equivalence is made").

The ALJ did exactly that here. As discussed above, the ALJ relied on the medical opinions of Dr. Thrush and Dr. Settle, both Disability Determination Service physicians, who served as state agency consultants in this case. (Tr. 21, 54-60, 72-75). Drs. Thrush and Settle found no medical equivalence when they made their respective RFC determinations, meaning that by simply by relying on these medical opinions, the ALJ did consider whether Smith medically equaled the Listing. (*Id.*).

Moreover, where the evidence in the record supports the ALJ's conclusion, "there is no merit to the plaintiff's argument that the ALJ erred in failing to find his condition equivalent to

22

the Listing." *Gower*, 2015 WL 163830, at *26 (quoting *Retka*, 70 F.3d 1272, at *2); *Johnson*, 2015 WL 730094, at *25 (quoting *Retka*, 70 F.3d 1272, at *2). The Sixth Circuit has instead "shifted the focus to 'the claimant's burden . . . to bring forth evidence to establish that he or she meets or equals a listed impairment.'" *Id.* "Consequently, an ALJ's Listing analysis must be viewed in light of the evidence the claimant presents." *Id.* But Smith did not make a sufficient showing that he medically equals Listing 3.02(A).

To meet his Step Three burden, Smith was required to "present specific medical findings that his impairment meets the applicable impairment or present medical evidence that describes how his impairment is equivalent to [Listing 3.02(A)]." *Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Land v. Sec'y of HHS*, 814 F.2d 241, 245 (6th Cir. 1986)). That is, "an ALJ's listing analysis must be viewed in light of the evidence the claimant presents." *Johnson v. Comm'r of Soc. Sec.*, No. 13-CV-14797, 2015 WL 730094, at *25 (E.D. Mich. Feb. 19, 2015). A claimant's mere reference to "relevant" medical evidence in support of an equivalence argument is insufficient; rather "[he] must . . . present medical evidence that describes *how* [his] impairment is equivalent to a listed impairment." *Gallagher v. Comm'r of Soc. Sec.*, No. 10-CV-12498, 2011 WL 3841632, at *8 (E.D. Mich. Mar. 29, 2011), *report and recommendation adopted*, No. 10-12498, 2011 WL 3841629, at *8 (E.D. Mich. Aug. 30, 2011) (emphasis in original).

Here, Smith has done nothing more than assert, in conclusory fashion, that his FEV$_1$ scores and lung age warrant a finding of equivalence. In light of the Sixth Circuit's ruling that the claimant bears the burden "to bring forth evidence to establish that he or she . . . equals a listed impairment," this does not suffice. *Johnson*, 2015 WL 730094, at *25. For example, in *Gallagher,* 2011 WL 3841629, at *8, the court rejected such a bare assertion, writing, "Plaintiff

23

seeks to shift her burden to the Court: she asks the Court to find some way to align Dr. Levin's diagnoses with those elements in Listing 1.04A and determine that the ALJ erred in his equivalency determination. This is without legal basis." Thus, because Smith failed to connect his $FEV_1$ scores and lung age to the criteria of Listing 3.02(A) he has not met his burden here. *See Skinner v. Comm'r of Soc. Sec.*, No. CV 15-12368, 2016 WL 7856434, at *8 (E.D. Mich. Dec. 16, 2016), *report and recommendation adopted,* No. 15-CV-12368, 2017 WL 227955 (E.D. Mich. Jan. 19, 2017).

Finally, a review of the ALJ's decision as a whole and the record indicates that the ALJ accurately portrayed Smith's condition and impairments in making her Step Three determination. The ALJ noted Smith's long history of COPD—in combination with a parallel history of smoking two packs of cigarettes per day—and considered both sets of $FEV_1$ testing. (Tr. 19) (citing Tr. 239, 307, 318). In addition to recognizing Smith's good effort and shortness of breath during these examinations (*id.*) (citing Tr. 317-320), the ALJ relied on medical findings that Smith had "normal respiration" during hospital visits on October 9, 2014, December 2, 2014, and March 3, 2015. (*Id.*) (referencing Tr. 365, 370, 377) (checking boxes for "normal" respiratory functioning). For the reasons stated above, the ALJ also properly addressed the medical opinions and other medical evidence in the record. And, the Court notes that Smith stopped working on not because of his impairments, but because he was laid off when his company lost a contract. (Tr. 184, 417-18).

For all of these reasons, substantial evidence supports the ALJ's finding that Smith's impairments do not meet or medically equal Listing 3.02(A).

### 3. The ALJ Did Not Err in Failing to Provide a Function-by-Function Assessment of Smith's Exertional Capacity

Smith argues that the ALJ violated SSR 96-8p because she did not include in her decision a "function-by-function assessment" of Smith's exertional capacity, "which involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling." (Doc. #18 at 11) (citing SSR 96-8p). Smith avers that "each function must be considered separately," and that "it is clear that the ALJ failed to include substantial limitations in the RFC finding correlating to symptoms and limitations which were well-documented in the record." *Id.* at 12. This argument has been expressly rejected by the Sixth Circuit, and lacks merit in any event.

> Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJ's to produce such a detailed statement in writing . . . . [T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002) (internal citations omitted).

Here, the ALJ provided a thorough discussion of the basis for her decision as to Smith's RFC, including the nature of his impairments and resulting functional limitations, and how she analyzed the record evidence. (Tr. 21-26). The ALJ's assessment of the RFC indisputably reflects consideration of Smith's exertional capacity, because in addition to reciting each of the physicians' opinions on that issue, she restricted Smith to light work, which by definition "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that Smith's Motion for Judgment on the Administrative Record [17] be DENIED, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

Dated: March 19, 2018                    s/ David R. Grand
Ann Arbor, Michigan                 DAVID R. GRAND
                                     United States Magistrate Judge
                                     Sitting by Special Designation

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(a) and (b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Order and Report and Recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.